1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0708
Facsimile:  (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Joshua B. Glatt (State Bar No. 354064)
Karen B. Valenzuela (State Bar No. 357231)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jglatt@bursor.com
          kvalenzuela@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEAN FETTERS, individually and on behalf of all others similarly situated, | Case No.   2:25-cv-9753 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| ECOWISE WELLNESS LLC, and PROSPER NUTRITION LLC | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

CLASS ACTION COMPLAINT—JURY TRIAL DEMANDED

Plaintiff Dean Fetters ("Plaintiff") brings this action on behalf of himself, and all others similarly situated, against EcoWise Wellness LLC and Prosper Nutrition LLC (collectively, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action against Defendants for falsely advertising that their "Creatine Monohydrate Gummies" (the "Products") contain 5000 milligrams ("mg") of creatine when multiple sets of independent testing found the Products contain almost none.

2.     Defendants' Products are bite-sized workout supplements consumers take like gummy vitamins. The gummies are marketed as containing creatine, a supplement popular with gym-goers to help build muscle in their workouts.

3.     Defendants claim that each version of the Product contains 5000 mg or 5 grams of creatine per serving. A serving is four gummies. However, third party testing of Defendants' Products found that the Product contained *zero* creatine monohydrate per serving.[1] Indeed, confirmatory testing conducted by Plaintiff's counsel found that the Product contained less than 0.05 mg of creatine per gummy: 0.004% of what Defendants expressly represent is in their Product *per serving*. As such, two separate sets of testing have found that Defendants' 5000 mg creatine gummies are severely underfilled.

4.     Accordingly, Plaintiff seeks relief in this action on behalf of himself and on behalf of similarly situated purchasers of Defendants' Products for violations of: (i) California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*; (ii) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§

---

[1] SuppCo, *SuppCo Tested: Let's Make Sense of Supplements* (June 12, 2025), https://supp.co/tested/creatine.pdf.

17200, *et seq*.; (iii) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (iv) breach of express warranty; and (v) unjust enrichment.

## **PARTIES**

5.      Plaintiff Dean Fetters is a citizen of California and resident of Los Angeles, California.  Plaintiff first purchased Defendants' strawberry-flavored Product in or around April 2025 from Amazon from his home in Los Angeles, California.  Prior to purchasing Defendants' Product, Plaintiff saw and reasonably relied on Defendants' affirmative representation that the Product contains 5000 mg of creatine per serving.  Plaintiff reasonably relied on this representation, which Defendants make both on their Product's Amazon page and on the front of the package in choosing to purchase the Product.  Plaintiff understood Defendants' representation to mean exactly what Defendants claim: that the Product contains 5000 mg of creatine per serving.  This representation was part of the basis of the bargain in that he would not have purchased the Product or would not have purchased it on the same terms had he known Defendants' representation and warranty was untrue.  In making his purchase, Plaintiff paid a price premium for the Product because he was under the belief he was getting 5000 mg of creatine per serving, when he was not.  As a direct result of Defendants' material representation, Plaintiff suffered, and continues to suffer, economic injuries.

6.      Plaintiff remains interested in purchasing Defendants' Products in the future.  However, Plaintiff is unable to determine if the Products contain the amount of creatine Defendants claim.  So long as Defendants market their Products as containing an amount of creatine when the Products actually contain less than that stated amount, Plaintiff will be unable to make informed decisions about whether to purchase Defendants' Products and will be unable to evaluate the different prices between Defendants' Products and competitors' products.  Plaintiff is further likely to be repeatedly misled by Defendants' conduct, unless and until Defendants are compelled to ensure that the Products' creatine content is accurately represented.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7.    Defendant EcoWise Wellness LLC, is a Delaware corporation with its principal place of business in Florida.  At all times relevant to this Complaint, Defendant EcoWise has advertised, marketed, distributed, or sold the Products to consumers throughout the United States and California, including in this District.

8.    Defendant Prosper Nutrition LLC is a Florida corporation with its principal place of business in Florida.  At all times relevant to this Complaint, Defendant Prosper Nutrition LLC has advertised, marketed, distributed, or sold the Products to consumers throughout the United States and California, including in this District.

9.    Defendants operate in concert and together derive the benefits from sales of the Products.  Defendants operate jointly and are under the control of the same management and officers.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed Classes (defined below), exclusive of interest and costs, exceed the sum or value of $5,000,000 and at least some members of the proposed Classes are citizens of states different from Defendants.

11.    This Court has general and personal jurisdiction over Defendants because Defendants purposefully avail themselves of the benefits of doing business in this District by selling their Products in this District.  A substantial portion of the events giving rise to this action occurred in this District.

12.    Venue is proper in this District because Defendants sold their Products to consumers in this District and Plaintiff was harmed by Defendants' actions in this District.

1

## **FACTUAL ALLEGATIONS**

2

**A.    Creatine In Workout Supplements**

3

13.    Creatine is a natural source of energy that helps skeletal muscles

4

contract.  This is essential when performing any physical activity.

5

14.    Creatine in its naturally occurring form is a compound comprised of

6

three amino acids produced in the liver, kidneys, and pancreas.  While creatine aids

7

muscles when performing physical activity, research has found that the level of

8

naturally produced creatine in the body is usually insufficient to improve athletic

9

performance.  This is why athletes and gym goers may rely on synthetic creatine

10

supplements.  The most studied synthetic creatine formulation is creatine

11

monohydrate, with the strongest evidence for efficacy.[2]

12

15.    Creatine supplements are intended to make workouts more effective.

13

Specifically, creatine aids in increasing anaerobic energy capacity—which is

14

produced during heavy weightlifting, sprinting, or high-intensity interval training—

15

and decreasing protein breakdown, leading to increased muscle mass and physical

16

performance.[3]  Creatine supplements also help direct more water to muscles, which

17

in turn, increase muscle growth while reducing dehydration and cramping.  Creatine

18

also stimulates anabolic production, which contributes to muscle growth and tissue

19

repair.  These phenomena lead to a faster recovery as they help repair the microtears

20

in muscle fibers at rates the naturally occurring creatine on its own does not.  For

21

these reasons, creatine supplements are highly sought by those interested in muscle

22

23

24

25

[2] *Athletes and fitness influencers use creatine, but what is it? And does it work?* The Guardian, May 16, 2025, https://www.theguardian.com/wellness/2025/may/15/what-is-creatine-benefits-drawbacks.

26

27

[3] Richard B. Kreider & Jeffery R. Stout, *Creatine in Health Disease*, Nutrients (Jan. 2021) *available* 10.3390/nu13020447.

28

1  and strength training.  The general recommendation for creatine monohydrate as a

2  supplement is 3 to 5 grams per day.[4]

3      16.    Research has also linked creatine to cognitive benefits including

4  improved executive function and memory and reducing mental fatigue.[5]  As such,

5  creatine is increasingly appealing to a more expansive demographic than just those

6  who are seeking to optimize their workouts.  Indeed, Grand View Research, a

7  product segment survey firm, valued the global creatine supplements market size at

8  $1.1 billion in 2024 and projects it to reach $4.21 billion by 2030.

9      17.    Defendants sell their Products on their website for $45 for a single pack,

10  $80 for a 2-pack, and $115 for a 3-pack[6] and for $35.97 for a single pack on

11  Amazon.[7]

---

[4] Howard E. LeWine, MD, *What is creatine? Potential benefits and risks of this popular supplement,* HARVARD HEALTH PUBLISHING (Mar. 20, 2024), https://www.health.harvard.edu/exercise-and-fitness/what-is-creatine-potential-benefits-and-risks-of-this-popular-supplement.

[5] Richard B. Kreider & Jeffery R. Stout, *supra* note 4 at 5.

[6] ECOWISE, *Micronized Creatine Monohydrate Gummies Pouch*, available https://ecowisevitamins.com/products/ecowise-micronized-creatine-monohydrate-gummies-pouch

[7] https://www.amazon.com/EcoWise-Wellness-Creatine-Monohydrate-Chewables/dp/B0D2PBKP32/ref=sr_1_2_sspa?crid=2IUTFXGKLXOAW&dib=eyJ2IjoiMSJ9.q6xJD2INVWdoqto6LAIjSX-FeQCQ7eMBix3dNjnhFC3ELEIbX7JaZInj0ivKILBBoFnwrvmQwCrSC0vWnbc86dODt-PlkTcNzfyLHx8lfIBElV70matgzldhSTzRtLaWeO3yjI5nNcfQ9QNMb4SHJo0DzVQPPJCbXCU_rCNgA2SXXD9NpjR1CXYwW-UCPzBJIdTw6qNoJJUlBZGFEftSDsbyBETZKFz6hUL6nzx16wnQMTSCf0vdNYXgiv8tAibcTJT22Wi52bvvsL79LJchFcUuiFJ9dU-NDVjCJWbgV3I.iM1qbFI_1HBh3nHfx54S80O7Bouezr53dQKCLfvEnIA&dib_tag=se&keywords=ecowise%2Bcreatine%2Bgummies&qid=1752540378&sprefix=ecowise%2B%2Caps%2C157&sr=8-2-spons&sp_csd=d2lkZ2V0TmFtZT1zcF9hdGY&th=1

---

### B.    Defendants Advertise Their Products For Broad Appeal

18.    Defendants seek to capitalize on creatine's growing demand. Defendants market their Products to reach all consumers.  They claim the Products support strength and muscle growth and provide cognitive, heart, and joint support. Defendants' Products cannot provide any of these benefits because they contain no creatine.



19.    The Products are sold in two flavors: strawberry and mango.  The mango version of the Product is substantially similar to that which Plaintiff purchased.  Indeed, the two flavors feature identical formulations and identical representations, differing only in flavor and container type; the strawberry flavor comes in a pouch while the mango flavor comes in a jar.  These differences are inconsequential.  Critically, both claim to contain 5000 mg per serving.  Both are produced, manufactured, and sold by the same Defendants.

///

///

///

///

///

 

20.     As such, Plaintiff can bring claims on behalf of purchasers of Defendants' substantially similar version to the one he purchased.

21.     Critically, where the serving size is represented as 4 gummies, Defendants represent on the nutrition facts of each variety that the serving size contains 5000 mg of creatine or 5 grams of creatine per serving.

///

///

///

///

///

///

///

///

///

///

///

///




**C.    Defendants Lean On Their Creatine Content Claims**

22.    Defendants represent to consumers that each gummy contains 1.25 grams of micronized creatine monohydrate:[8]

**HOW MUCH CREATINE IS IN EACH GUMMY?**

There are 1.25 grams of micronized creatine monohydrate in every gummy.

23.    Indeed, Defendants lean heavily on their creatine content marketing.  As stated on their Amazon sales page, the Products "[d]eliver[] 5000 mg of creatine

---

[8] https://ecowisevitamins.com/products/ecowise-micronized-creatine-monohydrate-gummies-pouch

monohydrate in convenient chewable gummies" and the Products purportedly offer "quality you can trust."[9]  On their Product website, Defendants boast:

## ECOWISE VS. THE REST: WHY OUR MICRONIZED CREATINE GUMMIES LEAD THE MARKET

24.     Worse, Defendants attempt to reassure consumers about the reliability of their Products by touting the Products' "scientific formulation," "potent formula" and that the Products contain an "extra ingredient that…make[s] this formula more advanced."[10]  Defendants even represent on the strawberry flavor packaging itself that the Products are "scientifically formulated" and "lab verified."

25.     Similarly, Defendants add on their website that their Products are "made with clean, clinically-studied ingredients that [consumers] can trust."[11]  And like on the label, Defendants boast that their Products are "scientifically formulated with clean, clinically-proven ingredients."[12]  Indeed, Defendants state that their Products are "scientifically formulated by [] nutritionists[,]…tested for purity + potency and

---

[9] https://www.amazon.com/EcoWise-Wellness-Creatine-Monohydrate-Chewables/dp/B0D2PBKP32/ref=sr_1_2_sspa?crid=2IUTFXGKLXOAW&dib=eyJ2IjoiMSJ9.q6xJD2INVWdoqto6LAIjSX-FeQCQ7eMBix3dNjnhFC3ELEIbX7JaZInj0ivKILBBoFnwrvmQwCrSC0vWnbc86dODt-PlkTcNzfyLHx8lfIBElV70matgzldhSTzRtLaWeO3yjI5nNcfQ9QNMb4SHJo0DzVQPPJCbXCU_rCNgA2SXXD9NpjR1CXYwW-UCPzBJIdTw6qNoJJUlBZGFEftSDsbyBETZKFz6hUL6nzx16wnQMTSCf0vdNYXgiv8tAibcTJT22Wi52bvvsL79LJchFcUuiFJ9dU-NDVjCJWbgV3I.iM1qbFI_1HBh3nHfx54S80O7Bouezr53dQKCLfvEnIA&dib_tag=se&keywords=ecowise%2Bcreatine%2Bgummies&qid=1752540378&sprefix=ecowise%2B%2Caps%2C157&sr=8-2-spons&sp_csd=d2lkZ2V0TmFtZT1zcF9hdGY&th=1

[10] https://ecowisevitamins.com/products/ecowise-micronized-creatine-monohydrate-gummies-pouch

[11] Id.

[12] Id.

are free of toxins…and other components that should never be in a vitamin."[13]
Defendants also claim their Products are "formulated by sport scientists[.]" Despite
so much "science" backing their Products, Defendants' Products do not contain the
featured component the Products represent, *i.e.*, 5000 mg of creatine. Instead, they
contain almost none—surely credible science would not have been this far off.

26.     Defendants claim their "potent formula uses Micronized Creatine, an
extensively researched and highly soluble type of creatine with superior
bioavailability … [which makes] it easier for your body to absorb faster and deliver
more creatine to your cells."[14] This also cannot be true since there is virtually no
creatine in the Products. Needless to say, consumers are not afforded the benefits
like "lean muscle[;] strength and stamina[;] faster recovery[;] joint health[;]
cognition support[;] gut health[;] immunity[; or] cardiovascular health"[15] associated
with taking 5 grams of creatine a day.

### D.     Multiple Sources Found Defendants' Products Contain Less Than 1 Gram of Creatine Per Serving Size

27.     Defendants represent the Products' serving size is 5000 mg of creatine
per serving, or 4 gummies. Two separate sources found this to be untrue.

28.     First, in June 2025, independent third-party testing by SuppCo (a health-
tech startup focused on helping consumers understand and manage their supplement
use) tested the creatine claims of Defendants' Creatine Monohydrate Gummies 5000
mg. SuppCo's testing involved buying Defendants' Product directly from the
marketplace and sending it unopened to a fully independent ISO 17025 certified
third-party laboratory for testing.[16] The testing analyzed creatine per serving using

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] SuppCo, *SuppCo Tested: Let's Make Sense of Supplements* (June 12, 2025), https://supp.co/tested/creatine.pdf.

---

High-Performance Liquid Chromatography (HLPC), the most commonly used and widely validated method for testing creatine supplements. SuppCo's testing found the Product contained **zero** creatine per serving, that is, 0% of the creatine content that Defendants claim.

29.    In July 2025, Plaintiff's counsel commissioned testing of Defendants' Products that corroborated these results. Like SuppCo, Plaintiff's counsel purchased Defendants' Mango flavored Product directly from the marketplace and sent it unopened to a certified laboratory to test the Product's creatine levels. Plaintiff's counsel's testing, conducted by an ISO/IEC 17025:2017 accredited laboratory using Ultra-Performance Liquid Chromatography (UPLC), a more advanced form of HLPC testing, found that the Product contained less than 0.05 mg of creatine per gummy. That is, 4 gummies (*i.e.*, the serving size) provide at most 0.20 mg of creatine *per serving*.

30.    The tests found Defendants' Products were dramatically underfilled as Defendants' Products contained little to no creatine.

31.    These findings represent less than 4% of the amount of creatine Defendants represent to consumers is in the Products and far below any effective dose.

32.    And since Defendants claim that their Products are "scientifically formulated" and "lab verified," Defendants are best situated to know the creatine content in their Products was untrue and severely underfilled. No real science could have missed this badly. Nonetheless, they continued to market their Products as containing 5000 mg of creatine to consumers like Plaintiff.

33.    Defendants likely knew but continued to sell their Products at 5000 mg creatine supplements. Discovery will reveal the extent to which Defendants were aware.

34.    Defendants' Products do not contain the represented quantity of creatine. Therefore, Defendants' representations are false and misleading and

consumers, like Plaintiff, were injured.

35.    The amount of creatine in the Products is material to consumers.  It should come as no surprise that "'[c]onsumers often rely on [front-of-package] claims for health-related information, and this information can affect their evaluations and choices.'"[17]

36.    Given consumers' interest in creatine products, Defendants sought to capitalize on this desire by representing to consumers that their Products were a good source of creatine.  Consumers lack the ability to test or independently ascertain or verify whether the Products contain the true levels of creatine Defendants claim.  Thus, consumers rely on Defendants to truthfully and honestly report the creatine content of the Products on the packaging.

37.    Yet, when consumers look at the Products' packaging, they are led to believe that they have significantly more creatine than they actually contain because of what Defendants represent.

## **FED. R. CIV. P. 9(b) ALLEGATIONS**

38.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

39.    **WHO:** Defendants EcoWise Wellness LLC and Prosper Nutrition LLC.

40.    **WHAT:** Defendants' conduct was, and continues to be, deceptive because they are deceiving consumers into believing that the Products contain more creatine per serving than the Products contain.  Defendants failed to accurately fill

---

[17] Lucas Cuni-Mertz, et al., *How Consumers Are Swayed By Products' Nutrient Content and Processing Claims*, Univ. of Arkansas, Sam M. Walton College of Bus. (Nov. 15, 2021) *available* https://walton.uark.edu/insights/posts/how-consumers-are-swayed-by-products-nutrient-content-and-processing-claims.php.

the Products with the correct amount of creatine they listed on the Products' front label and at online points of sale. Defendants knew or should have known, as the manufacturers and marketers of the Products with superior knowledge of the composition of their Products, that this information is material to reasonable consumers. Yet, Defendants misrepresented on the labeling of their Products that they contain more creatine than they actually do and have failed to ensure the Products in fact contain the amount of creatine Defendants warrant. Defendants knew or should have known that the Products contained less creatine than labeled because Defendants are the manufacturers of the Products and have quality control testing protocols set in place that should have alerted Defendants of the underfilled nature of the Products' creatine content.

41.    **WHEN:** Defendants engaged in this deceptive conduct continuously throughout the applicable statutory period, including at the point of sale. Defendants' false and misleading creatine representations were printed on the Products' front label and online sales pages for consumers to view and rely on.

42.    **WHERE:** Defendants' misrepresentations were made on the Products' front label and marketing materials and were thus viewed by every purchaser, including Plaintiff, at the point of sale in every transaction. The Products are sold online nationwide. Defendants' underfill of the creatine occurred in Defendants' manufacturing facilities.

43.    **HOW:** Defendants misrepresented on the Products' front label that they contain 5000 mg of creatine per serving when separate sets of independent testing revealed that they contain significantly less creatine than represented. And as discussed in detail throughout the Complaint, Plaintiff and Class Members read and relied on Defendants' misrepresentations regarding the creatine content before purchasing the Products and in choosing to purchase the Products.

44.    **WHY:** Defendants misrepresented the amount of creatine they include in their Products. This representation was material in that it induced consumers like

Plaintiff to purchase the Products for their purported nutritional benefit while charging consumers a price premium.  Accordingly, due to the representation, Plaintiff and Class Members paid a price premium for the Products that they would not have, or would have paid substantially less for, had the Products not been deficient in creatine contrary to Defendants' express representations.  As such, Defendants unlawfully profited by selling the Products to thousands of consumers throughout the nation, including Plaintiff and the Class Members.

45.    **INJURY:** Plaintiff and Class Members were injured by Defendants' conduct in that they would not have purchased the Products on the same terms, had they known that Defendants' Products contain less creatine than Defendants expressly represent on the packaging.

## CLASS ALLEGATIONS

46.    Plaintiff seeks to represent a nationwide class defined as:

All persons in the United States who purchased the Products for personal or household use during the statute of limitations period (the "**Nationwide Class**").

47.    Plaintiff also seeks to represent a California Subclass defined as:

All Class members who purchased the Products for personal or household use in California during the statute of limitations period (the "**California Subclass**").

48.    Collectively, the Nationwide Class and California Subclass shall be referred to as the "Classes."

49.    Excluded from the Classes are (1) Defendants and any entities in which Defendants have a controlling interest; (2) Defendants' agents and employees; (3) any Judge and/or Magistrate Judge to whom this action is assigned and any member of such Judges' staff and immediate families; (4) Plaintiff's Counsel; and (5) Defendants' Counsel.

50.    Subject to additional information obtained through further investigation

and discovery, the foregoing definitions of the Classes may be modified, expanded, or narrowed by amendment to the Complaint or narrowed at class certification.

51.    ***Numerosity***: The members of the Classes are geographically dispersed throughout the United States and are so numerous that joinder of all members is impracticable.  Plaintiff is informed and believes that the proposed Classes contain at least thousands of consumers throughout California and the United States who have been damaged by Defendants' conduct as alleged herein.  The precise number of members of the Classes is unknown to Plaintiff at this time.

52.    ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

(a)    Whether the Products contain the stated amount of creatine;

(b)    Whether Defendants knew or should have known the Products had less creatine than represented;

(c)    Whether Defendants are liable to Plaintiff and the Classes for unjust enrichment;

(d)    Whether the underfill of creatine renders the Products misbranded;

(e)    Whether Defendants violated the state consumer protection statutes alleged herein;

(f)    Whether Plaintiff and the Classes have sustained monetary loss and the proper measure of that loss;

(g)    Whether a reasonable consumer would consider the amount of creatine in the Products to be material;

(h)    Whether Plaintiff and the Classes are entitled to restitution and disgorgement from Defendants; and

(i)    Whether the packaging for the Products is deceptive.

53.    ***Typicality***: Plaintiff's claims are typical of the claims of the Classes in that Plaintiff, like all members of the Classes, purchased the Products, which are

---

CLASS ACTION COMPLAINT—JURY TRIAL DEMANDED                    15

underfilled with creatine, in reliance on the representations and warranties described above. Plaintiff and members of the Classes suffered a loss as a result of the purchases and so were injured by Defendants' misconduct in the very same way. In other words, the factual bases of Defendants' misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

54. ***Adequacy of Representation***: Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Classes.

55. ***Superiority***: A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendants. It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CAUSES OF ACTION**

**COUNT I**
**Violation Of California's Consumer Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff and the Classes)**

56.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

57.     Plaintiff brings this claim individually and on behalf of the Members of the Classes against Defendants.

58.     Plaintiff and other Members of the Classes are "consumers" within the meaning of California Civil Code Section 1761(d).  By purchasing Defendants' Products, Plaintiff and the Classes engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

59.     Defendants are a "person" within the meaning of Cal. Civ. Code § 1761(c).  Defendants' Products are a "good" within the meaning of Cal. Civ. Code § 1761(a).

60.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which she or he does not have."

61.     Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

62.     Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

63.     Defendants violated these provisions by severely overstating the amount of creatine contained in the Products.

64.     Defendants' wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

65.    Plaintiff and the Members of the Classes suffered economic injury as a direct and proximate result of Defendants' violation because: (a) they would not have purchased the Products on the same terms if they had known that the Products did not contain the amount of creatine Defendants affirmatively stated; (b) they paid a price premium compared to products without the misrepresentation alleged herein; and (c) the Products did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

66.    On or about September 2, 2025, prior to the filing of this complaint, Defendants received a CLRA notice letter, which complies in all respects with Cal. Civ. Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA, and demanding Defendants cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The CLRA letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.  Defendants failed to take remedial action.

67.    Plaintiff and Members of the Classes seek actual and punitive damages, restitution, reasonable costs and attorneys' fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT II**
**Violation Of California's Unfair Competition Law, ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(On Behalf of Plaintiff and the Classes)**

68.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

69.    Plaintiff brings this claim individually and on behalf of the Members of the Classes against Defendants in the alternative to the extent allowed by Fed. R. Civ. P. 8(d)(2).

70.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or

misleading advertising and any act." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by unlawful and/or unfair business practices or acts.

71.    Defendants' acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to Cal. Bus. & Prof. Code §§ 17200, *et seq.*

72.    Defendants violated the UCL's proscription against engaging in **Unlawful Business Practices** as a result of their violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* in addition to violations of common law.

73.    As more fully described above, Defendants' misleading marketing, advertising, packaging, and labeling of the Products deceived reasonable consumers. In addition, Defendants have committed unlawful business practices, by *inter alia*, making the representations of material facts, as set forth more fully herein, and violating the common law.

74.    Plaintiff and the Class Members reserve the right to allege other violations of law, which constitute unlawful business acts or practices.

75.    Defendants have also violated the UCL's proscription against engaging in **Unfair Business Practices**. Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§ 17200, *et seq.* in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of the conduct

outweighs any alleged benefits attributable to such conduct. Defendants' deceptive practices led consumers to purchase the Products over other comparable creatine gummy products that properly represent their creatine content. Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendants' conduct. Since consumers reasonably rely on the Products' labels, consumers could not have reasonably avoided such injury.

76. Plaintiff and the Members of the Classes suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendants' unlawful, fraudulent, and unfair packaging about the defective nature of the Products.

77. Defendants have further violated the UCL's proscription against engaging in **Fraudulent Business Practices**. Defendants' claim and misleading statements concerning the Products' creatine content, as more fully set forth above, is false, misleading and likely to deceive the consuming public.

78. Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Members of the Classes are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

79. Pursuant to California Business and Professional Code § 17203, Plaintiff and the Members of the Classes seek restitution, injunctive relief, attorneys' fees, and all other relief that the Court deems proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT III
### Violation Of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*. (On Behalf of Plaintiff and the Classes)

80.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the Members of the Classes against Defendants in the alternative to the extent allowed by Fed. R. Civ. P. 8(d)(2).

82.     The FAL makes it "unlawful for any person … to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

83.     Defendants committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of their Products by representing on the Products' packaging that the Products contain more creatine per serving than the Products actually contain.

84.     Defendants knew or should have known that their advertising claims are misleading and/or false.

85.     Defendants knew or should have known, through the exercise of reasonable care, that their representation was false and misleading and likely to deceive consumers and cause them to purchase Defendants' Products.

86.     Defendants' wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.  Plaintiff and the Members of the Classes were injured in fact and lost money and property as a result.

---

87.     The misrepresentation and non-disclosures by Defendants of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

88.     As a result of Defendants' wrongful conduct, Plaintiff and the Members of the Classes lost money in an amount to be proven at trial.  They are therefore entitled to restitution as appropriate for this cause of action.

89.     Plaintiff and the Members of the Classes seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief; injunctive relief, reasonable attorneys' fees, and all other relief that the Court deems proper.

90.     Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to the Members of the Classes are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

91.     Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from his purchase of the Products is determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiff and the Members of the Classes would be left without the parity in purchasing power to which they are entitled.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class)**

92.    Plaintiff hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

93.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendants.

94.    Plaintiff brings this claim under the laws of the State of California.

95.    In connection with the sale of the Products, Defendants issued written express warranties in that Defendants affirmatively warranted that the Products contained 5000mg of creatine when they contained almost none.  Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers of the Products, expressly warranted that Products are fit for their intended purpose by making promises and affirmations of fact on the Products' packaging.

96.    The affirmation of fact and promise made by Defendants to Plaintiff and the Nationwide Class regarding the Products became part of the basis of the bargain between Defendants, Plaintiff, and the Members of the Nationwide Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.  However, the Products do not, in fact, contain the amount of creatine promised on the packaging.

97.    Plaintiff and Members of the Nationwide Class suffered economic injury as a direct and proximate result of Defendants' breach of warranties because: (a) they would not have purchased the Products on the same terms if they had known that the Products had been falsely labeled as alleged herein; (b) they paid a price premium for the Products based on Defendants' express warranties; and (c) the Products did not have the characteristics, uses, or benefits as promised by Defendant on the packaging.  As a result, Plaintiff and the members of the Nationwide Class have been damaged either in the full amount of the purchase price of the Products or

1  in the difference in value between the Products as warranted and the Products as

2  sold.

### COUNT V
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class)

98.   Plaintiff hereby re-alleges and reincorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

99.   Plaintiff brings this claim individually and on behalf of the Nationwide Class members against Defendant.

100.   Plaintiff brings this claim in the alternative to the extent allowed under Fed. R. Civ. P. 8(d)(2).

101.   Plaintiff brings this claim under the laws of the State of California.

102.   Plaintiff and Members of the Nationwide Class conferred a benefit in the form of monies paid to Defendants by purchasing creatine-underfilled Products.

103.   Defendants voluntarily accepted and retained this benefit.

104.   Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and the Nationwide Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable in light of the misrepresentations of fact made by Defendants in the packaging of the Products.  These misrepresentations caused injuries to Plaintiff and Nationwide Class Members because they would not have purchased the Products if the true facts had been known.

105.   Because this benefit was obtained unlawfully, namely by selling and accepting compensation for creatine-underfilled Products, it would be unjust and inequitable for Defendants to retain it without paying the value thereof. Accordingly, Plaintiff and Members of the Nationwide Class seek restitution as ordered by the Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, and on behalf of all others

similarly situated, seeks judgment against Defendants, as follows:

      (a)   For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative for the Classes, and naming Plaintiff's counsel as Class Counsel;

      (b)   For an order declaring that Defendants' conduct violates the statutes referenced herein;

      (c)   For an order finding in favor of Plaintiff, the Nationwide Class, and the California Class on all counts asserted herein;

      (d)   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

      (e)   For prejudgment interest on all amounts awarded;

      (f)   For an order of restitution and all other forms of equitable monetary relief;

      (g)   For injunctive relief as pleaded or as the Court may deem proper; and

      (h)   For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: October 10, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _/s/ Philip L. Fraietta_
     Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0708
Facsimile:  (914) 206-3656
E-mail: pfraietta@bursor.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BURSOR & FISHER, P.A.**
Joshua B. Glatt (State Bar No. 354064)
Karen B. Valenzuela (State Bar No. 357231)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: jglatt@bursor.com
         kvalenzuela@bursor.com

*Attorneys for Plaintiff*

---

CLASS ACTION COMPLAINT—JURY TRIAL DEMANDED                    26

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Philip L. Fraietta, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Dean Fetters, who resides in Los Angeles, California.  I have personal knowledge of the facts set forth in this declaration and as called as a witness, I could and would completely testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California, as Plaintiff Fetters purchased the Product in this District.  Additionally, Defendants advertised, marketed, manufactured, distributed, and/or sold the Products at issue to Class Members in this District.

3.      I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at White Plains, New York this October 10, 2025.

*/s/ Philip L. Fraietta*
Philip L. Fraietta